[Civ. No. 13424. First Dist., Div. One. Dec. 9, 1947.]

AUGUSTIN SILVEYRA, Appellant, v. JOY P. HARPER, Respondent.

Fabian D. Brown for Appellant.

O'Keefe & O'Keefe for Respondent.

PETERS, P. J.—Plaintiff, Augustin Silveyra, brought this action against defendant, Joy P. Harper, to recover from defendant on a $6,000 promissory note alleged to have been executed by defendant. The defendant denied liability, and in addition, counterclaimed for $12,000, claiming that plaintiff was indebted to him in that sum under the terms of a contract alleged to have been breached by plaintiff. The trial court found that the promissory note was unsupported by consideration and found for defendant on his counterclaim for the full amount requested—$12,000. From this judgment plaintiff appeals.

Appellant has filed a three-page opening brief and a two and a third-page closing brief. Respondent has filed a four-page reply brief. Neither counsel has seen fit to summarize the facts, nor has either counsel analyzed the points of law involved in relation to the facts. This has imposed a totally unnecessary burden on this court.

The following statement of facts is taken from the reporter's transcript:

During the year 1945 respondent, a contractor and trainer of race horses, agreed with one Vallejo Leal to construct a road from Tia Juana, Mexico, to the Pacific Ocean, over certain property owned by Leal. By July, 1945, Leal owed respondent $14,000 for work already performed. Leal did not have the money to pay this debt and respondent discontinued work. Under these circumstances, on July 14, 1945, in Tia Juana, Leal, respondent and appellant (the latter being the manager of a Tia Juana race track) met for the purpose of ascertaining whether appellant would advance money to Leal so that he could pay respondent for his past and future work on the road. Respondent testified that a contract was entered into in writing signed by all three of the parties. Respondent had no copy of the con-

tract and when, upon demand during the trial, appellant could not produce it, he contending no such contract had been executed, the trial court permitted respondent to testify over objections as to its terms. He testified that by this written agreement appellant agreed to advance to Leal the sum of $20,000 at 20 per cent interest, which loan was to be secured by a mortgage on the real property owned by Leal. The money was to be paid to Leal for the use and benefit of respondent, it being agreed that $6,000 in cash was to be paid to respondent upon the execution of the agreement so that respondent could meet his payroll and pay past due bills, $4,000 one week from the date of the agreement, and $10,000 30 or 40 days from the date of the agreement. Pursuant to the terms of this agreement, appellant, on July 14, 1945, paid to respondent the sum of $6,000. Respondent, thereupon, as contemplated by the agreement and in reliance upon it, once again started work on the road, worked on it for two weeks, and incurred labor and other charges of $4,000. Appellant, however, did not, as provided in the agreement, pay to respondent or to Leal for respondent the sum of $4,000 one week after July 14, 1945, nor at any other time. Thereupon, respondent stopped work on the road. The reason why appellant refused to pay the $4,000 and the $10,000 required to be paid by him under the contract is that Leal, and the appellant were unable "to legalize" the mortgage. In other words, for reasons that do not appear, appellant did not secure from Leal the mortgage he was to receive as security for the money advanced. The trial court interpreted the contract to mean that appellant was absolutely obligated to pay to respondent the sum of $14,000 owed by Leal to respondent and further obligated appellant to pay the $4,000 required under the contract to be paid on July 21, 1945, making a total of $18,000. Of this sum he had paid respondent $6,000, leaving a balance of $12,000. It was on this theory that the trial court gave judgment against the appellant on his counterclaim for $12,000, although Leal had not complied with the agreement by giving appellant the promised mortgage.

The promissory note which forms the basis of the action by appellant against respondent was for $6,000 and was admittedly signed by respondent. It is dated "San Diego, California, August 6th, 1945." Respondent testified, and the trial court found, that in fact the note was executed

in Tia Juana, Mexico. Appellant testified that about July 31, 1945, he loaned to respondent $6,000 so that respondent could finish his road contract with Leal. He denied knowing anything else about that road contract and denied entering into the contract discussed above. He stated that the August 6, 1945, note was given as evidence of this loan, and had not been repaid. Respondent denied this story in its entirety, and the trial court has found in accordance with respondent's testimony. This conflict must be resolved in favor of respondent.

Respondent testified that on August 6, 1945, appellant was manager of a race track in Tia Juana. Respondent, as agent and trainer for the owners, had certain race horses stabled at the track, the horses being valued at in excess of $10,000. Appellant claimed respondent owed him $6,000. If respondent's story is to be believed, and since the trial court so found we must conclusively presume it is true, this claim was based apparently on the $6,000 advanced by appellant to respondent under the Silveyra-Harper-Leal contract of July 14, 1945. Respondent denied that he owed appellant $6,000 or any other sum, but appellant threatened that unless respondent signed the $6,000 note, he, the appellant, would detain the race horses in Tia Juana. Respondent testified that the owners of the horses had instructed him to bring the horses to the United States. Under these circumstances respondent signed the note in order to release the horses. The trial court found that the note was unsupported by consideration and that finding is obviously supported.

No attempt was made to prove the Mexican law, and no findings were made on that subject. Under such circumstances, since this court may not take judicial notice of the law of a foreign country, in the absence of proof to the contrary it will be presumed that the foreign law is the same as California law even where the California law is statutory law. (See many cases collected 5 Cal.Jur. p. 430, § 12; 3 Cal.Jur., 10-Yr. Supp., p. 724, § 12.)

It is most difficult to ascertain from appellant's scanty briefs the exact basis of his attack on the judgment. The judgment, insofar as it denies appellant any relief on his cause of action on the promissory note, is obviously supported by the evidence and findings, and the findings support the judgment. So far as the contract forming the basis of the counterclaim is concerned, it seems to be

appellant's thought that the contract was between appellant and Leal for the benefit of respondent, and that because the contract was never completed by the giving of security, respondent as a third party beneficiary could acquire no rights thereunder. No authority is cited for this position. ▮ While it is the law of California that a third party beneficiary of a contract may sue thereon (Civ.Code, § 1559), it is also the law that the parties to such contract may rescind, no estoppel being present, at any time prior to the institution of suit by the beneficiary. (*More* v. *Hutchinson*, 187 Cal. 623 [203 P. 97]; *K. Lundeen Corp.* v. *Barlow*, 120 Cal.App. 391 [7 P.2d 1102]; see note 12 Cal.L.Rev. 328.) Here, the parties interpreted the contract of July 14, 1945, as requiring appellant immediately, and before security was provided, to pay to respondent $6,000. That must have been the interpretation of the parties because that sum was paid. ▮ The contract also contemplated that respondent, on the faith of the contract, would immediately, and before security was provided, start work on the road and incur obligations which appellant agreed to pay up to $4,000 on July 21, 1945. In reliance on that agreement respondent did incur obligations up to $4,000. That sum appellant must pay even if this were a third party beneficiary contract which normally could be rescinded by the parties before the beneficiary has commenced suit, because such rescission cannot affect rights of third parties that have vested in reliance on the contract and pursuant to its terms prior to the rescission. As to the $4,000, appellant is estopped from exercising his normal right of rescission for the obvious reason that, in reliance on appellant's promise to pay, respondent recommenced work, and thus changed his position to his injury by incurring $4,000 of obligations. In his reply brief appellant concedes the existence of such an estoppel as to the $4,000. But the same cannot be said as to the balance of the judgment. ▮ The judgment was for $12,000. The $8,000 difference between the $4,000 already mentioned, and the amount of the judgment, was to pay off Leal's obligation to respondent which had been incurred prior to the date the contract was entered into. Obviously, appellant was not going to pay that sum to respondent unless and until he got his promised security. As to this obligation, if the contract was a third party beneficiary contract, no estoppel exists because respondent in

no way changed his position to his damage in reliance on that part of the promise. Thus either because Leal and appellant rescinded, or because the contract was never completed by the giving of security, respondent cannot recover as to this $8,000.

The preceding discussion has proceeded on the theory that this was a third party beneficiary contract. A more logical interpretation of the relationship of the parties, however, is that this was a tripartite agreement. Respondent testified that that all three signed the agreement and assumed obligations thereunder. Respondent was therefore not a mere beneficiary of the contract, but was a party to it. The contract required appellant to advance $6,000 at once to respondent before the promised mortgage was to be executed. That portion of the contract went into immediate operation and was executed. The contract also required respondent to immediately commence work and contemplated that he would incur obligations. This respondent did to the extent of $4,000. ▮ While the contract contemplated that security would be given by Leal to appellant, that could not have been an implied condition precedent to the obligation to pay the $4,000. That obligation became fixed and certain upon the execution by respondent of that part of the contract. But, as to the balance of $8,000 for which judgment has been granted, it was obviously an implied condition that Leal furnish appellent the mortgage security. That condition not having been performed, and no elements of estoppel being present as to this portion of the contract, the obligation to pay this sum never came into existence.

It is quite apparent, therefore, that, whether the agreement be treated as a third party beneficiary contract or a tripartite transaction, the same result follows—the judgment may be sustained only to the extent of $4,000, and must be reversed as to the balance.

Appellant, citing as his sole authority section 1938 of the Code of Civil Procedure, contends that the trial court erred in allowing respondent to give oral testimony of the contents of the contract over appellant's objection that the contract was the best evidence. The respondent testified that the contract was delivered to appellant, and the court permitted respondent to demand production of the contract during the trial. Appellant urges that this violated section 1938 in that that section requires ''reasonable notice''

to be given the party in possession of the document to produce it.

When respondent's counsel, during the trial demanded the production of the document, appellant's counsel did not complain that he needed further time to secure the document, or that he had been taken by surprise and damaged by this late request, but took the position that "there never was any such document" and "there is no such document." In other words, appellant's position was that no such document had ever been executed. How appellant could have been prejudiced by not being given reasonable notice to produce a document appellant claimed did not exist does not appear. Obviously, no prejudice could have resulted and it was not error to admit secondary evidence of the contents of the contract. (See, generally, IV Wigmore on Evidence, 3d ed., § 1208, p. 375; *Jones* v. *Jones,* 38 Cal. 584; *Burke* v. *Table Mountain Water Co.,* 12 Cal. 403.)

Appellant also objects to a ruling permitting secondary evidence, respondent's copy, of the receipt which respondent testified he gave to appellant's attorney. Demand was made for the original at the trial but counsel stated that he did not have it. The court, without objection by appellant, admitted the copy. The failure to object on the ground that reasonable notice had not been given to produce operates as a waiver. (See, generally, 10 Cal.Jur. p. 858, § 137; 5 Cal.Jur., 10-Yr. Supp., (1944 Rev.) p. 661, § 137.)

None of the other rulings of which complaint is made could possibly have been prejudicial.

That portion of the judgment denying to plaintiff any relief on his cause of action is affirmed; that portion of the judgment granting affirmative relief to defendant in the amount of $12,000, and based upon the counterclaim, is reversed. The trial court is instructed to modify its findings, conclusions and judgment so as to reduce the judgment to $4,000 as herein indicated; both sides to bear their own costs on this appeal.

Ward, J., and Bray, J., concurred.